# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JEREMY RAY HALL,<br><br>    Defendant. | Case No. CR05-0066<br><br>REPORT AND RECOMMENDATION |

This matter comes before the court pursuant to Defendant Jeremy Ray Hall's August 29, 2005 motion to suppress evidence (docket number 19). The motion was referred to the undersigned United States Magistrate Judge for issuance of a report and recommendation. The court held an evidentiary hearing on this motion on September 6, 2005, at which the defendant was present and represented by David Nadler. The government was represented by Assistant United States Attorney Stephanie Rose. It is recommended that the defendant's motion to suppress evidence be denied.

The motion to suppress arises out of a warrantless search of the defendant's vehicle while it was parked in the St. Luke's Hospital parkade in the early morning hours of August 18, 2005. The defendant argues that the search of his vehicle violated his right to be free from unreasonable search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution. The defendant contends that the search was illegal because he "explicitly denied law enforcement's request to search [his] Grand Marquis," because this was not a search incident to a lawful arrest, and because there is no other applicable exception to the requirement for a search warrant in this case. The defendant asserts that the search was not a valid inventory search because there was too much discretion both

1

within the applicable inventory/impound policy itself as well as despite the policy. The court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Officer Thai Nguyen of the Cedar Rapids Police Department was dispatched to St. Luke's Hospital at approximately 1:27 A.M. the morning of August 18, 2005, for a complaint of sexual assault. Officer Nguyen interviewed the alleged victim of the sexual assault, who reported that both the defendant and another man, Walter Luloff, had sexually assaulted her, had recently been involved with narcotics, and may have outstanding warrants for their arrest. The alleged victim further reported that both the defendant and Mr. Luloff were involved in the manufacture of methamphetamine and had in recent days been "out in the woods making meth."[1] The alleged victim also reported that there may be items associated with the manufacturing of methamphetamine in the defendant's vehicle.

Shortly after Officer Nguyen left the hospital, dispatch notified him that the would-be sexual assault assailant, the defendant, had arrived at St. Luke's Hospital. Officer Nguyen returned to St. Luke's and located the defendant along with two other individuals. Officer Nguyen and Officer Cody Estling questioned the defendant concerning his identity. The defendant initially identified himself as Andrew Jargon. When asked by Officer Estling if he was certain about his identification, the defendant answered that Officer Estling should "maybe try running Jeremy Hall." It was discovered that there was an outstanding arrest warrant for the defendant, Jeremy Hall, for a probation violation. The defendant was arrested at approximately 2:45 A.M.

It was learned that a Grand Marquis parked in the St. Luke's Hospital parkade belonged to the defendant. The parkade in which the defendant was parked was a private lot for patients and guests of the hospital. When the officers requested consent to search his vehicle, the defendant refused. Officer Herbert and Officer Estling stood near the

---

[1] CRPD Investigator Anthony Robinson testified that the alleged victim gave this information during his interview of the victim on August 18, 2005.

2

defendant's unoccupied vehicle to secure it while they awaited further command concerning what to do with the vehicle. The vehicle was secured because of the reports by the alleged victim that the vehicle may contain items associated with the manufacture of methamphetamine. Neither of the two men who had accompanied the defendant to the hospital offered to take possession of the defendant's vehicle. One of the individuals had produced a non-driver identification card for identification purposes, indicating that he likely did not have a valid drivers license. The defendant did not request that either of the individuals take possession of the vehicle for him.

Officer Robert Kasper relieved Officers Estling and Herbert and secured the vehicle. St. Luke's personnel were notified that the defendant had been arrested. St. Luke's personnel requested that the defendant's vehicle be towed from its parkade. Accordingly, Officer Kasper treated the tow as a private property tow request, and called for a tow truck.[2] At the time that Officer Kasper called for a tow truck and treated the tow as a private property request, he was unaware that the defendant had been arrested.[3]

At approximately 6:00 A.M., Officer Kasper and a drug dog officer began an inventory search of the defendant's vehicle, including the trunk of the vehicle. During the course of the inventory search, the officers found numerous items commonly associated with the manufacture of methamphetamine, including: (1) plastic bottles containing methamphetamine and pseudoephedrine residue; (2) coffee filters containing sludge; (3) a gallon plastic pitcher containing sludge; (4) empty glass jars; (5) heavy rubber gloves; (6) an HCL generator made with a plastic pop bottle; (7) empty lithium battery containers; (8) camping fuel; (9) an empty paint thinner container; and (10) numerous empty blister packages and boxes for other 30 mg pseudoephedrine tablets. The officers also discovered

---

[2] Officer Kasper contacted Darrah's Towing & Recovery in Hiawatha, Iowa.

[3] Officer Kasper testified that although he knew that the defendant had been taken to the police station, he did not know for certain whether the defendant had been arrested.

items commonly associated with the intravenous use of narcotics, including empty syringe packages and cotton balls. Additionally, the officers discovered a Winchester Model 1200 12 gauge pump shotgun with serial number L1128644 inside a closed gym bag. In the same gym bag, officers discovered two partial, non-operable shotguns with sawed off barrels. Officer Kasper completed the "Vehicle Removal or Impounding Report" (Government Exhibit 2). A "Wrecker Request Slip" was not completed because that form is only used when a vehicle owner is present when the request for tow is made. The defendant's vehicle was to be towed but not impounded. A parking ticket was issued.

The Cedar Rapids Police Department's policy (CRPD policy) on towing or impounding vehicles sets forth the following requirements, in relevant part, for a private property tow:

> Vehicles towed from private property upon the property owner's request requires the following:
> (1) The lot must be posted with proper signs at each entrance or posted so signs can be seen from anywhere in the lot stating 'Private Property-Unauthorized Vehicles Will Be Towed.' (Signs must have been posted for at least 24 hours before we will enforce)
> (2) A Vehicle Removal or Impounding Report (CRPD 328) will be filled out with the property owner or person in charge filling out and signing Part 2.
> (3) <u>A parking ticket will be issued.</u>
> (4) A wrecker from the towing company which has the city contract will be used to tow this vehicle.

Each of these four requirements were satisfied. The CRPD policy allows for a "complete inventory, to include the trunk . . . when the keys are available." The CRPD policy further provides that:

> Officers should ask the driver of any vehicle being impounded for any reason, if they have valuables in any secured containers in the vehicle, so that the container may be taken for safe keeping until the owner can claim the items. The officer should request permission to open the container in the driver's presence, to verify the claim of value. If the driver

4

> refuses, the container should be removed to the police
> department for safekeeping and noted in the officer's report.

There is no definition of "sealed containers" in the CRPD policy. Officers testified that the term is understood among them to mean locked containers, or containers that are not accessible to the officers, and excludes containers that are simply "closed."

## **CONCLUSIONS OF LAW**

The defendant contends that the inventory search of his vehicle was unlawful because there was too much discretion exercised by the officers both within the confounds of the CRPD policy as well as outside of the policy. Specifically, the defendant takes issue with the fact that (1) the officers had discretion to choose whether to treat this case as a tow incident to an in-custody arrest or as a private property tow; (2) there is no definition of "sealed containers" in the CRPD policy and so the officers impermissibly have used discretion in determining that closed containers are not "sealed containers"; and (3) while it is contemplated in the CRPD policy that a search warrant may be obtained, the officers exercised discretion in this case to proceed with an inventory search rather than attempting to secure a search warrant for the defendant's vehicle.

When the government seeks to introduce evidence seized during a warrantless search, it bears the burden of showing (1) that there is an applicable exception to the warrant requirement; and (2) that the government's conduct fell within the bounds of the applicable exception. See United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993) (citing Mincey v. Arizona, 437 U.S. 385, 391 (1978)). One such exception to the warrant requirement is the exception for reasonable inventory searches. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976). It is well established that law enforcement officers may conduct a warrantless search and inventory of a vehicle in order to protect the owner's property, protect the police against claims of lost or stolen property, and protect the police from potential danger. United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001) (citing Colorado v. Bertine, 479 U.S. 367, 372 (1987)). Such inventory searches, if conducted according to reasonable, standardized police procedures "which vitiate concerns of an

5

investigatory motive or excessive discretion," are found to be reasonable. Hartje, 251 F.3d at 776 (citing Marshall, 986 F.2d at 1174). However, "law enforcement officers may not raise the inventory search banner in an after the fact attempt to justify what was . . . purely and simply a search for incriminating evidence." Id. When law enforcement officers conduct an inventory search in accordance with reasonable, standardized procedures, they do not have to shield their eyes from incriminating items that may be discovered in the course of the inventory search, "so long as their sole purpose is not to investigate a crime." Id. (citing Marshall, 986 F.2d at 1175). In determining whether a given inventory search is reasonable, the court considers the totality of the circumstances. Hartje, supra, at 775 (citing Marshall, 986 F.2d at 1175).

The court finds that the CRPD policy concerning private property tows is a reasonable, standardized policy that does not give undue or excessive discretion to officers. See Hartje, 251 F.3d at 776 (citing Marshall, 986 F.2d at 1174). The court further finds that under the totality of the circumstances in this case, the inventory search itself was conducted in a reasonable manner. It was certainly within Officer Kasper's discretion, and reasonably so, to determine that the inventory and tow should be treated as a private property tow rather than an in-custody arrest tow. St. Luke's hospital, a private party, had requested that the defendant's vehicle be towed. Further, at the time that Officer Kasper made the decision to treat the incident as a private property tow, he was unsure as to whether the defendant had in fact been arrested. All of the guidelines for a private property tow, which guidelines the court has found to be reasonable, were appropriately followed in this case. Finally, the court finds that the officers did not exercise excessive discretion in determining that "sealed containers" do not include containers that are simply closed, and therefore properly searched the closed containers pursuant to the CRPD policy.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[4] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the defendant's motion to suppress (docket number 19) be denied.

September 8, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[4]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.

7